UNITED STATES DISTRICT COURT
DISTRICT MAINE

| | |
|---|---|
| NORTHERN MAINE TRANSPORT LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:10-cv-00370-JAW |
| ) | |
| ONEBEACON AMERICA INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant ) | |

**ORDER ON DEFENDANT'S MOTION
TO ENFORCE SETTLEMENT AGREEMENT**

Defendant OneBeacon America Insurance Company removed this matter from the Aroostook County Superior Court in August 2010. Plaintiff Northern Maine Transport's complaint recites three counts arising under Maine statutory law and alleging an entitlement to over $800,000 in insurance proceeds. On May 10, 2011, Defendant requested court enforcement of a purported settlement agreement. The parties have entered a limited consent authorizing the undersigned to hear evidence and resolve the pending motion to enforce. The matter came on for hearing October 12, 2011. I now make the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

Plaintiff Northern Maine Transport LLC has two owners/managers, Paul Beaudry and Tyler Hallett. Plaintiff retained Attorney Alan Harding to represent it in its efforts to obtain insurance proceeds from Defendant OneBeacon America Insurance Company following a fire at Plaintiff's premises. Given multiple coverage options and various insured loses, Attorney Harding enlisted assistance from Shawn Manter, an independent insurance adjuster, to help Plaintiff calculate and advance its claim in the most advantageous manner possible.

On March 14, 2011, the parties participated in a mediation session with Eugene Coughlin serving as mediator. Messrs. Beaudry, Hallett, Harding and Manter appeared at the mediation on behalf of Plaintiff. Each of these men appeared as a witness at the hearing on the pending motion. Also present at the mediation were counsel for Defendant OneBeacon, Peter Marchesi, as local counsel, and William Stewart of Pennsylvania. Mr. Stewart appeared as a witness at the hearing. Although Defendant had personnel in attendance at the mediation, none of these individuals appeared to testify at the hearing. The hearing was conducted by Attorney Marchesi on behalf of Defendant/Movant, and by Attorney Roger Brunelle, Jr., on behalf of Intervenor Plaintiff Paul Beaudry, the sole party in opposition to the motion. Attorney Samuel Lanham, Jr., appeared on behalf of Intervenor Plaintiff Tyler Hallett, who joined in support of the motion. The testimony of the witnesses demonstrates, by a preponderance of the evidence, the following facts.

Paul Beaudry and Tyler Hallett are the two managers of Plaintiff Northern Maine Transport LLC. Neither man possesses exclusive authority to bind the company to a settlement agreement. They both agreed to hire Attorney Harding to represent Plaintiff, but based on Beaudry's testimony, as of the March 14, 2011, mediation session, Beaudry was considering that he might want to hire different counsel. The testimony of Beaudry, Harding, and Manter indicates that Beaudry's personal assumption about the value of Plaintiff's insurance claim was appreciably higher than the assessments of value indicated by Manter. Mr. Harding testified that the claims were complex and that it was difficult to assess how to value and distribute Plaintiff's various losses across multiple coverage provisions. According to Harding, Beaudry was not happy that maximum coverage could not be paid for "coverages that were not at stake." Similarly, Mr. Manter testified that Beaudry's expectations were significantly higher than what

was likely to be achieved. Based on the pleadings in this action, OneBeacon initially denied the claim altogether, although there was no evidence presented regarding the circumstances surrounding that initial denial of the claim.

Despite his frustrations, Beaudry agreed to go to the mediation with Hallett, Harding, and Manter. On March 14, 2011, they gathered at Coughlin's office and met with OneBeacon's representatives in a conference room that permitted some OneBeacon representatives to appear by videoconference. Mr. Coughlin later separated the parties by relocating Plaintiff's party to another room. The mediation then proceeded through a series of competing demands and offers. Mr. Beaudry participated in the process in a limited fashion. Mr. Manter described him as "non-committal" and not very vocal, but indicated that Beaudry agreed to the value of some demands during the process. However, Beaudry was growing tired of the process when it got to the point at which their demand was in the $400,000 range. He abruptly stood up while Mr. Coughlin was in their room and began preparing to depart. Attorney Harding asked him where he was going and Mr. Beaudry replied that he was tired, had "had enough," and was going home. Mr. Beaudry did not tell the others or Mr. Coughlin that the mediation should cease. Instead, based on the testimony of Hallett, Harding, Manter, and Beaudry himself, Mr. Beaudry told them either "do whatever you want to do" or "do whatever you need to do." He then departed.

The testimonial evidence does not provide a clear picture of what was said to Mr. Beaudry by the others in the room prior to his indication that they should do whatever needed to be done.[1] However, based on the testimony of Hallett, Harding, Manter, and Coughlin, everyone who remained in the room believed from the context of the exchange that Beaudry understood that they were going to continue with the mediation and that Beaudry had allowed that they

---

[1] Attorney Harding noted that Mr. Beaudry was certainly capable of calling things to a halt because he had done so during a prior negotiation session. Harding's point was that this time around, at the mediation session, Mr. Beaudry did not make it plain that the process should stop.

might do so. The remaining group, including Mr. Coughlin, had a brief conversation about the existence of authority to proceed and unanimously assessed that they should continue. Due to Mr. Beaudry's communication style, this was not crystal clear, but there was a unanimous assessment by Hallett, Harding, and Manter that Beaudry had "authorized" them to continue and simply did not wish to participate in the process. Mr. Coughlin agreed with this assessment. He testified that he "definitely" recollects that Beaudry authorized the others to continue and stated that he would have called the process off if that had not been clear to him. According to Mr. Coughlin, words were exchanged indicating that Beaudry would be reachable by phone. In fact, Mr. Hallett and Mr. Manter contacted Mr. Beaudry by phone subsequent to his departure and it was apparent to everyone, including Mr. Beaudry, that the mediation was continuing apace. On this evidence, I am unable to find that Mr. Beaudry's communication was sufficiently "clear" for anyone to infer that Mr. Beaudry authorized them to enter into a final settlement agreement without his assent, but the communication was sufficient to permit the mediation to continue in Beaudry's absence. Beaudry told Mr. Hallett, in effect, that he could do whatever needed to be done. Arguably, this was open-ended enough to permit Mr. Hallett to settle Northern Maine Transport's claims. However, Beaudry did not expressly delegate authority to finally settle the case and it appears that the parties were still in the negotiating phase when Beaudry absented himself from the mediation, although the gap had been significantly narrowed. What Beaudry did do was give his consent for the mediation to proceed in his absence.

    After Beaudry's departure, those remaining at the mediation arrived at settlement terms mutually agreeable to Mr. Hallett and OneBeacon and these terms were reduced to writing by Attorney Marchesi. Defendant introduced the original handwritten settlement agreement during the testimony of Mr. Hallett and it was admitted without objection. (Def.'s Ex. 1.) The terms of

the settlement agreement are incorporated into this order by reference. The parties then reconvened in one conference room and Mr. Manter reached Mr. Beaudry by cell phone. Mr. Manter told Beaudry that everyone was present and that he was on speaker phone. Then, Attorney Marchesi went over the terms of the agreement. There was conflicting testimony whether Mr. Marchesi read the agreement word-for-word or whether he described it term-by-term. In either event, everyone agrees that Mr. Marchesi described all of the terms found in the hand-written settlement agreement and Mr. Beaudry testified to the effect that they were made known to him. Those terms are described in the written agreement and require the following: payment of $299,000 by OneBeacon; payment of three identified creditors from the settlement proceeds; execution by Northern Maine Transport, Mr. Hallett, and Mr. Beaudry of a general release and indemnification agreement, a stipulation of dismissal, and any other documents necessary to finalize the settlement; an acknowledgment that the parties are bound by the settlement agreement; and a release and discharge by Northern Maine Transport, Mr. Hallett, and Mr. Beaudry of any and all related claims against OneBeacon. Mr. Marchesi communicated these terms to everyone present, including Mr. Beaudry by speakerphone. Marchesi asked if there were any questions. Beaudry did not raise any.

  According to Mr. Hallett, Mr. Beaudry verbally agreed to these terms and said it was okay for Hallett or Attorney Harding to sign for him. According to Mr. Manter, Beaudry once again said "you do what you need to do," but he additionally expressed agreement to having Harding sign on his behalf. According to Attorney Harding, Beaudry was asked whether Mr. Hallett and Mr. Harding were authorized to sign the agreement on behalf of Northern Maine Transport and on his own behalf and Beaudry said "yes." Mr. Stewart, co-counsel for OneBeacon, testified that Beaudry's answer regarding the settlement was in the affirmative and

that Beaudry granted authority to sign to Hallett and Harding. According to Mr. Stewart, it was repeatedly expressed that the agreement would be binding and Beaudry expressed his agreement. Mr. Coughlin testified that the terms were read to Beaudry and that he said he agreed. Mr. Coughlin made a post-mediation note to the file indicating that at the conclusion of the mediation all participants were in the room to hear Beaudry say on the telephone that he agreed to the terms of the settlement. (Def.'s Ex. 3.)

Following this exchange, Mr. Hallett signed the settlement agreement on behalf of Northern Maine Transport and on his own behalf. Attorney Harding signed the agreement as attorney-in-fact for Mr. Beaudry. Hallett and Harding also signed a memorandum of understanding stating that there was an agreement to be bound and to prepare and sign any documents necessary to finalize the settlement. Based on the testimony presented at the hearing, I find that Mr. Beaudry verbally agreed to the terms of settlement and authorized Mr. Hallett and Mr. Harding to sign on behalf of Northern Maine Transport and on Beaudry's behalf.

Mr. Beaudry was the last witness to testify. His account differs in certain material respects from the accounts given by the other witnesses. His view is that Attorney Harding and Mr. Hallett should have understood that he did not want to participate any longer and he maintains that "at no time" did he "give anyone authority to sign" on his behalf. He explained that Mr. Manter reached him prior to the settlement agreement to keep the line open and that his response was merely "whatever." He testified that Mr. Marchesi expressed or explained the terms to him but that no one ever said there was a hand-written document to be signed or for him to authorize being signed. According to Mr. Beaudry, Mr. Marchesi indicated that he would have the papers typed up and sent to him. When questioned by Attorney Lanham, Beaudry was unwilling to say that Mr. Coughlin had erroneously described the verbal exchange on the

telephone. He would only say that he has "questions" about how everything transpired. Beaudry did not disagree that the settlement was discussed with him or that the terms were in any respect divergent from what he had been told, but steadfastly asserted that he was never asked to authorize anyone else to sign a document. Beaudry maintains that he did not realize there would be any signatures on that day. Mr. Beaudry was not a persuasive witness. Even if his account were credited, he did not expressly counter the testimony of the other witnesses to the effect that he expressed assent to the terms of settlement. In any event, I find that the other witnesses provided more credible testimony and I credit their mutual representation that Beaudry expressed both (1) agreement to the settlement terms and (2) agreement to let Mr. Hallett and Mr. Harding sign the settlement agreement for both Northern Maine Transport and for himself.

## PROCEDURAL HISTORY

Defendant OneBeacon initially raised the settlement issue by means of a counterclaim for breach of contract. (Doc. No. 20.) Following that pleading, Attorney Harding twice sought additional time to respond based on the inability of Mr. Hallett and Mr. Beaudry to agree as to how to respond and the possible need to involve separate counsel. (Doc. Nos. 23, 25.) Shortly thereafter, Defendant proposed in a status report that there be a short discovery cycle and an opportunity to present a motion for summary judgment in support of the counterclaim. (Doc. No. 27.) This course was adopted initially in a July 2011 report and order (Doc. No. 29), but following Attorney Harding's motion to withdraw (Doc. No. 31), it was determined in a further report and order that the counterclaim would proceed as a motion to enforce settlement (Doc. No. 34). Thereafter, on September 13, 2011, Mr. Brunelle entered his appearance for Mr. Beaudry. (Doc. No. 37.) Prior to the hearing, Mr. Brunelle and Mr. Marchesi, acting on behalf

of their respective clients, and Mr. Hallett, then proceeding pro se, consented to allow the undersigned to exercise jurisdiction over and resolve the motion to enforce.[2] (Doc. No. 42.)

**CONCLUSIONS OF LAW**

Where a settlement agreement arises in the course of litigation and the settlement collapses, the party seeking to enforce its terms should proceed by means of a motion to enforce. Fid. & Guar. Ins. Co. v. Star Equip. Corp., 541 F.3d 1, 5 (1st Cir. 2008) (citing Malave v. Carney Hosp., 170 F.3d 217, 220 (1st Cir. 1999)). Plaintiff's counterclaim for breach of contract has been converted into such a motion, as reflected on the electronic docket at item 20/36.

> To establish a legally binding agreement the parties must have mutually assented to be bound by all its material terms; the assent must be manifested in the contract, either expressly or impliedly; and the contract must be sufficiently definite to enable the court to determine its exact meaning and fix exactly the legal liabilities of the parties. For a contract to be enforceable, the parties thereto must have a distinct and common intention which is communicated by each party to the other.

Stanton v. Univ. of Me. Sys., 2001 ME 96, ¶ 13, 773 A.2d 1045, 1050 (quotation marks omitted) (quoting Searles v. Trs. of St. Josephs's Coll., 1997 ME 128, ¶ 13, 695 A.2d 1206, 1211).

The question of whether an enforceable settlement agreement exists presents a mixed question of law and fact. Fid. & Guar. Ins. Co. v. Star Equip. Corp., 541 F.3d 1, 5 (1st Cir. 2008). The Court has the power to enforce a settlement agreement, but where there exists a genuine dispute on a question of material fact, the Court must first hold an evidentiary hearing to

---

[2] The consent form was prepared by Attorney Marchesi and it identifies Attorney Brunelle as counsel for Plaintiff Northern Maine Transport. This is regarded as a typographical error. Mr. Brunelle's appearance was on behalf of Mr. Beaudry and his consent to the exercise of jurisdiction was given on Mr. Beaudry's behalf. Mr. Hallett retained Attorney Lanham shortly ahead of the hearing, after Mr. Hallett had consented in a pro se capacity. The nominal plaintiff, Northern Maine Transport, did not have any counsel appear on its behalf. (Doc. No. 44.) At the commencement of the hearing, Mr. Hallett joined in the motion to enforce the settlement. It is apparent that Mr. Beaudry and Mr. Hallett are not able to agree on who should be retained as counsel for Northern Maine Transport or on what positions counsel would advance in that capacity. It is for this reason that Mr. Beaudry and Mr. Hallett have been identified on the docket as intervenor plaintiffs.

resolve the contested factual issues.  Id.;  Malave v. Carney Hosp., 170 F.3d 217, 220 (1st Cir. 1999).  That hearing has been conducted and the factual findings have been set forth above.

An attorney may bind his client to a settlement agreement only if the attorney has actual authority to bind the client, as opposed to general authority to represent the client's interest.  Malave, 170 F.3d at 221;  Lane v. Maine C. Railroad, 572 A.2d 1084, 1084-85 (1990).  When Mr. Beaudry left the mediation, he gave general authority for Attorney Harding and Mr. Hallett to represent the interest of Northern Maine Transport at the mediation.  That was sufficient for the mediation to continue and an express delegation of actual authority to finally settle the case was not required.  Thereafter, terms of a proposed settlement agreement were mutually agreed upon and Mr. Beaudry was reached by speakerphone and received notice of the material terms of that agreement.  Mr. Beaudry verbally expressed his assent to those terms.  That expression of assent was an act sufficient to bind Beaudry to the agreement.

The law does not require that an agreement be signed in order for contracting parties to be bound.  "If that were so, for example, no party could ever settle in the courthouse by oral agreement."  Quint v. A. E. Staley Mfg. Co., 246 F.3d 11, 15 (1st Cir. 2001).  Mr. Beaudry's insistence that he believed he would have an opportunity to review the paperwork and withdraw his assent does not aid him.  Parties become contractually bound when they mutually express assent to be bound.  Their agreement may be expressed orally as well as in writing.[3]  Rulon-Miller v. Carhart, 544 A.2d 340, 341 (Me. 1988).  "Courts determine that mutual assent, not on the basis of what goes on inside the parties' heads, but rather on the basis of what they say and do."  Salem Laundry Co. v. New Eng. Teamsters & Trucking Indus. Pension Fund, 829 F.2d 278, 280 (1st Cir. 1987).  Although there are cases in which oral contracts do not arise because

---

[3] A signed writing is required for certain categories of contracts subject to the Statute of Frauds, 33 M.R.S. § 51, but the parties' settlement agreement does not fall into any of these categories.

mutual assent is not reached or expressed as to material terms, in this case the terms were all explained to Mr. Beaudry and he expressed his assent to them. Mr. Beaudry has not suggested that he lacked notice of any term material to the settlement of the case. As in Quint, Beaudry "cannot escape the consequences of [his] agreement because [he] spoke but did not write." 246 F.3d at 15.

This case does not require a legal finding related to the agency concept of apparent authority. This is so because Beaudry himself expressed his assent to the terms of the settlement agreement. Beaudry contests the assertion that he authorized anyone to sign a writing on his behalf, but this argument is beside the point given his own expression of assent to the agreement. In any event, Beaudry not only expressed his assent to the terms of the settlement agreement, but also expressed his assent that the hand-written settlement agreement be signed on his behalf. This was, for all practical purposes, little more than a ritualistic event. Once both Beaudry and Hallett expressed their agreement to the settlement offer on behalf of Plaintiff Northern Maine Transport, Plaintiff became bound by that agreement. The hand-written document, though signed, simply memorializes the mutually agreed upon terms.

## CONCLUSION

Defendant's motion to enforce settlement (Doc. No. 36) is hereby GRANTED pursuant to the consent authority[4] granted to me by both Plaintiff's owners/managers and Defendant.

*So Ordered.*
October 19, 2011                    /s/ Margaret J. Kravchuk
                                    U.S. Magistrate Judge

---

[4] The parties' limited consent does not give me authority to direct the entry of dispositive final judgment conforming to the terms of the agreement. Pursuant to the terms of the settlement agreement, the parties contemplated a stipulation of dismissal. This case will have to remain open on the docket until a stipulation of dismissal is filed or a judgment is entered by the court.